U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS
ON THE COURT'S DOCKET
TAWANA C. MARSHALL, CLERK

OCT 0 8 2014

D. Michael Lynn
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | Chapter 7 Cases |
| Tusa-Expo Holdings, Inc., Office Expo, Inc., and Tusa Office Solutions, Inc. | Case No.: 08-45057-dml-7 (Jointly Administered) |
| Debtors | |
| Marilyn D. Garner, Chapter 7 Trustee for Tusa Office Solutions, Inc., | Adversary No. 13-04087-DML |
| Plaintiffs, | |
| vs. | |
| Knoll, Inc., G.L. Seaman & Company, Andrew Cogan, Gary Jay, Bobby Lutz, Barry McCabe, Michael Pollner, Lynn Utter | |
| Defendants. | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW                                                          Page 1

# FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

In order to provide the Parties with the Court's basis for its ruling at the conclusion of the January 29, 2014 hearing (the "Hearing") on Knoll, Inc.'s ("Knoll") *Motion to Dismiss Trustee's First Amended Complaint* (the "Motion to Dismiss") [Docket #31], the Court makes the following *Findings of Fact and Conclusions of Law*:

## FINDINGS OF FACT[2]

**A.  Procedural History**

1. On November 5, 2008 (the "Petition Date"), Tusa Office Solutions, Inc. (the "Debtor" or "Tusa") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On July 16, 2009, the Debtor's case was converted to a case proceeding under Chapter 7 of the Bankruptcy Code. The same day, Marilyn D. Garner was appointed as the Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the Debtor's estate.

2. On August 23, 2013, Plaintiff filed her *Adversary Complaint* (the "Complaint") [Docket #1], initiating this case (the "Subordination Action"). On October 17, 2013, the Trustee filed her *First Amended Complaint* in the Subordination Action (the "Amended Complaint"). The Amended Complaint asserts affirmative claims against Knoll for, among other things: (i) Count I - equitable subordination under Section 510(c) of the Bankruptcy Code; (ii) Count II - certain alleged willful violations of the automatic stay under Sections 362 and 105(a) of the Bankruptcy Code related to Knoll and G.L. Seaman & Company's ("GLS") alleged exercise of control over Tusa's "business"; and (iii) Count III - conspiracy to control the price for which

---

[1] The following constitutes the Court's *Findings of Fact and Conclusions of Law* pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact can be construed as conclusions of law, they are adopted, and shall be construed and deemed as conclusions of law. To the extent any of the following conclusions of law can be construed as findings of fact, they are adopted, and shall be construed and deemed as findings of fact.

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion to Dismiss [Docket #31].

Tusa's "business" was transferred to GLS under Section 363(n) of the Bankruptcy Code (collectively, the "Bankruptcy Claims").[3]

3. The factual underpinnings of the Bankruptcy Claims include the Trustee's allegations that the Debtor was damaged because: (i) Knoll fraudulently induced the Debtor to file for bankruptcy by making knowingly false representations that Knoll would (a) act as the stalking horse bidder for a sale of the Debtor's assets under Section 363 of the Bankruptcy Code, and (b) would purchase the Debtor's assets if an investor / purchaser did not materialize during the Section 363 sales process when it never had an intent to do so; and (ii) Knoll conspired with Mr. Lutz and GLS to transfer the Debtor's "business" to GLS for insufficient consideration.

4. On November 4, 2013, Knoll filed its Motion to Dismiss, which sought to dismiss the Bankruptcy Claims. In the Motion to Dismiss, Knoll argued, among other things, that the rule against claim splitting (the "RACS") prohibits the Trustee from asserting the Bankruptcy Claims in the Subordination Action.

5. On December 3, 2013, the Trustee filed her *Brief in Support of Response to Motions to Dismiss* (the "Response") [Docket #45]. In her Response, the Trustee argued that the Court has exclusive jurisdiction over the Bankruptcy Claims, and, therefore, the State Court (defined below) is not a court of competent jurisdiction which can adjudicate them. Accordingly, the Trustee argued that the RACS did not prohibit her from maintaining Bankruptcy Claims in the Subordination Action.

---

[3] The Amended Complaint also asserted claims against Knoll for willfully violating the automatic stay by allegedly setting off amounts it owed Tusa for postpetition work performed on the BofA Project ("Count IV"), and to enforce the provisions of the DIP Order by requiring Knoll to pay the estate amounts (i) allegedly earned by Tusa for postpetition installation work performed on the BofA Project, and (ii) owed to the State of Texas for taxes related to Tusa's postpetition installation work ("Count V"). Counts IV and V were dismissed by the Court at the conclusion of the Hearing for the reasons stated on the record. These Findings of Fact and Conclusions of Law do not address Counts IV and V of the Amended Complaint.

6. The Trustee also argued in her Response, among other things, that Knoll acquiesced in the initial assignment of claims from the estate to TUFURN, LLC ("TUFURN") as part of the 2010 Settlement Agreement (as defined below) approved by this Court, and, therefore, Knoll could not contend, well after the Court approved settlement, that the assignment constitutes impermissible claim splitting.

B. **The Assignment of Claims**

7. On October 7, 2010, the Court entered an Order approving a settlement agreement between TUFURN and the Trustee (the "2010 Settlement Agreement"). Pursuant to the terms of the 2010 Settlement Agreement, the Debtor made an assignment to TUFURN of all of the estate's claims against Knoll, GLS, and certain related parties—excluding claims that arise under Chapter 5 of the Bankruptcy Code (the "Assigned Claims"). TUFURN subsequently assigned the Assigned Claims to Mr. Tusa in order for Charles J. Tusa ("Mr. Tusa") to assert them in state court.

C. **The State Court Action**

8. On March 12, 2013, Mr. Tusa filed his *Amended Counterclaims and Third Party Petition* (the "State Court Petition") in the District Court for the 95th Judicial District of Dallas County, Texas. The State Court Petition alleges claims against Knoll and Bobby Lutz ("Mr. Lutz") for, among other things: (i) fraud, and (ii) conspiracy to commit fraud (the "State Court Claims"). Like the Bankruptcy Claims, the factual underpinnings of the State Courts Claims are Mr. Tusa's allegations that the Debtor was damaged because: (i) Knoll fraudulently induced the Debtor to file for bankruptcy by making knowingly false representations that Knoll would (a) act as the stalking horse bidder for a sale of the Debtor's assets under Section 363 of the Bankruptcy Code, and (b) would purchase the Debtor's assets if an investor / purchaser did not materialize

during the Section 363 sales process when it never had intended to do so; and (ii) Knoll conspired with Mr. Lutz and GLS to transfer the Debtor's "business" to GLS for insufficient consideration.

### D. The Claims Arise Out of the Same Operative Nucleus of Fact

9. The Bankruptcy Claims are grounded on many of the same operative facts and/or same series of occurrences as the State Court Claims. Court Claims and the Bankruptcy Claims n.

### CONCLUSIONS OF LAW

10. Pursuant to the RACS, a plaintiff's claims in a second suit will be barred if: (i) the claims asserted therein involve the same parties as the claims asserted in the first lawsuit; (ii) the claims asserted in the second lawsuit arise out of the same transaction or series of transactions as the claims asserted in the first lawsuit; and (iii) the court in which the first lawsuit was filed was a court of competent jurisdiction with respect to the claims asserted in the second lawsuit. *Hearn v. Board of Supervisors of Hinds County Miss.*, Case No. 3:12-CV-417-CWR-FKB, 2013 WL 1305586, at *2 (S.D. Miss. March 27, 2013) (citing *Eubanks v. F.D.I.C.*, 997 F.2d 166, 171 (5th Cir. 1992)); *Super Van, Inc. v. City of San Antonio*, 92 F.3d 366, 370 (5th Cir. 1996). The prohibition against claim splitting does not apply, however, if the parties to the first and second lawsuit have agreed that the plaintiff may split its claim or if the defendant has acquiesced to such splitting of claims. *Super Van*, 92 F.3d at 370, or if the claims can only be pursued in a given court.

11. same parties as the State Court Claims, (ii) the Bankruptcy Claims arise out of the same transaction or series of transactions as the State Court Claims, and (iii) Knoll did not acquiesce to

assignment of the Assigned Claims to TUFURN or from Mr. Tusa's assignment of certain of the Assigned Claims back to the Trustee. The Court, however, denied the Motion to Dismiss with regard to Knoll's argument that the RACS barred the Trustee from asserting the Bankruptcy Claims because the State Court is not a court of competent jurisdiction to adjudicate the Bankruptcy Claims.

A. **The Bankruptcy Claims Involve the Same Parties as the State Court Claims.**

12. In order for the RACS to apply to the Bankruptcy Claims, such claims must involve the same parties as the State Court Claims. This requirement may be satisfied by a variety of pre-existing substantive legal relationships between the parties, including privity with respect to an assignment of claims. *See, e.g., Taylor v. Sturgell*, 128 S. Ct. 2161 (2008) ("nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment . . . include[ing], but are not limited to . . . assignee and assignor") (internal citations omitted); *Frank C Minvielle LLC v. Atl. Ref. Co.*, 337 Fed. Appx. 429 (5th Cir. 2009) (holding that the identity of-the-parties requirements for res judicata were met because assignor was in privity with the assignee). Accordingly, the Court finds that the assignments between the Trustee and Mr. Tusa make them the same party for purposes of the RACS because they are in privity with respect to the Assigned Claims.

B. **The Bankruptcy Claims Arise Out of the Same Transaction or Series of Transactions as the State Court Claims.**

13. The Fifth Circuit applies the "transactional test" to determine whether claims arise out of the same cause of action. *See Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *see also F.D.I.C. v. Nelson*, No. 93-1590, 1994 WL 93409, at *2 n.5 (5th Cir. Mar. 15, 1994); *Ameritox, Ltd. v. Aegis Sciences Corp.*, Civ. A. No. 3:08-CV-1168-D, 2009 WL

305874, at *4 (N.D. Tex. Feb. 9, 2009). Under the transactional test, "the critical issue is whether the two actions were based on the same nucleus of operative fact. In this inquiry, we look at the factual predicate of the claims asserted, not the legal issues upon which the plaintiff relies." *Hearn*, 2013 WL 1305586, at *2 (quoting *Eubanks*, 997 F.2d at 171); *see also S. Snow Mfg. Co., Inc. v. Snowizard Holdings, Inc.*, 921 F. Supp. 2d. 527, 541 (E.D. La. 2013) ("in evaluating whether claims arise out of the same cause of action, the court's emphasis is on the factual allegations contained in the [second] complaint, not on whether the plaintiffs have relabeled old facts as new claims").

14. The Bankruptcy Claims arise out of the same nucleus of operative fact and/or same transaction or series of related transactions or occurrences that form the factual basis for the State Court Claims (i.e., Knoll's (i) alleged misrepresentations that it would purchase the Debtor's assets in a Section 363 transaction, and (ii) alleged conspiracy with Mr. Lutz and GLS to transfer the Debtor's "business" to GLS for insufficient consideration). Moreover, the State Court Claims and Bankruptcy Claims attempt to measure damages in the same way (i.e., the alleged value of the Debtor's "business" and/or assets allegedly transferred to GLS). The Fifth Circuit's transactional test, therefore, is satisfied. Accordingly, the State Court Claims and the Bankruptcy Claims arise out of the same cause of action. *See Ameritox*, 2009 WL 305874, at *4; *see also Nelson*, 1994 WL 93409, at *2 n.5.

C. **Knoll Did Not Acquiesce to or Waive its Objection to the Alleged Improper Splitting of Claims.**

15. A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim. *Super Van*, 92 F.3d at 371 (citing Restatement (Second) Judgments § 26 cmt. a). The Fifth Circuit has adopted the Restatement's position that the prohibition against claim splitting does not apply if "'the

parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein.'" *Super Van*, 92 F.3d at 371 (quoting Restatement (Second) Judgments § 26(1)(a)). Other Circuits have likewise adopted this provision of the Restatement. *E.g., Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir.1995); *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 985 F.2d 27, 31 (1st Cir.) (describing the above-quoted provision as "general law on the subject"), *cert. denied*, 509 U.S. 907, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir.), *cert. denied*, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990); *Torres v. Rebarchak*, 814 F.2d 1219, 1225 n. 4 (7th Cir.1987).

16. ~~Knoll objected to the splitting of claims in this case.~~ Mr. Tusa's assertion of the ~~conspiracy and fraud claims in the State Court Action, and the subsequent assertion of the Bankruptcy~~ Claims by the ~~Trustee in Knoll's Motion to Dismiss. Accordingly,~~ The acquiescence doctrine does not apply in this context. ~~That Knoll did not object to the initial assignment of claims from the estate~~ to TUFURN does ~~not constitute acquiescence to claim~~ splitting. At the time of the initial assignment, Mr. Tusa had not yet asserted any claims against Knoll in the State Court Action, and the Trustee had not yet asserted the Bankruptcy Claims. Thus, at the time of the initial assignment, no splitting of claims had occurred because Knoll had not yet been sued by Mr. Tusa or the Trustee. After the Trustee asserted the Bankruptcy Claims against Knoll, Knoll objected to the claim splitting in its Motion to Dismiss because it had already been sued by Mr. Tusa on fraud and conspiracy claims, which constitute the same nucleus of operative fact as the Bankruptcy Claims. Thus, Knoll objected to the claim splitting at the first possible time after it was sued in two different forums based on claims with the same factual underpinning. ~~As a result,~~ Knoll did not acquiesce to claim splitting or waive any defenses related to claim splitting.

D. **The State Court is Not a Court of Competent Jurisdiction to Adjudicate the Bankruptcy Claims.**

17. This Court is a court of competent jurisdiction with respect to: (a) the Bankruptcy Claims; and (b) the State Court Claims. *See* 11 U.S.C. § 1334(b). The State Court, however, is not a court of competent jurisdiction to adjudicate the Bankruptcy Claims. Based on this Court's exclusive jurisdiction over the Bankruptcy Claims, this Court finds that the RACS does not bar the Trustee from asserting the Bankruptcy Claims.

18. The RACS does not apply if the court in which the first lawsuit was filed—in this case, the State Court—has no jurisdiction over the claims in the second lawsuit—here, the Bankruptcy Claims in the Subordination Action. The Supreme Court unequivocally reaffirmed the exclusive jurisdiction exception to claim splitting in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985).[4] Fifth Circuit courts have since consistently applied *Marrese* and concluded that the rule against claim splitting does not apply where the second court had exclusive jurisdiction over the claims at issue. *See, e.g., In re Lease Oil Litig.*, 200 F.3d 317, 321 (5th Cir. 2000) ("Because federal antitrust claims are within the exclusive jurisdiction of the federal courts . . . those claims could not have been litigated in [state court]" and the state court judgment in a prior action "does not bar the federal action under that doctrine"); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 788-790 (E.D. Tex. 2000) ("Thus, it appears that Texas' highest court adheres to the rule that claim preclusion does not foreclose a claim beyond the jurisdiction of the court rendering judgment").

19. This Court has exclusive jurisdiction over the Bankruptcy Claims, and is therefore the only court of competent jurisdiction which can adjudicate them. *See, e.g., In re*

---

[4] "If state preclusion law includes this requirement of prior jurisdictional competency, which is generally true, a state judgment will not have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts." *Id.* at 382 (emphasis added); *see also id.* at 383 n.3 ("where state preclusion rules do not indicate that a claim is barred, we do not believe that federal courts should fashion a federal rule to preclude a claim that could not have been raised in the state proceedings").

*Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) ("The notion of equitable subordination, as embodied in Code § 510(c), is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting."); *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999) (holding that state courts lack jurisdiction to impose sanctions for stay violations); 28 U.S.C. § 1334(e) (providing that bankruptcy courts have exclusive jurisdiction over property of the estate; accordingly, only bankruptcy courts can approve a sale of property of the estate). Thus, because the State Court has no jurisdiction over the Bankruptcy Claims, the RACS does not ban the Trustee's assertion of the claims in this Court—the only Court which does have jurisdiction over them.

20. Accordingly, this Court denied the Motion to Dismiss with regard to Knoll's argument that the RACS barred the Trustee from asserting the Bankruptcy Claims because the State Court is not a court of competent jurisdiction to adjudicate the Bankruptcy Claims; rather, this Court retains exclusive jurisdiction over such claims. ~~Were it not for this finding, the RACS would apply to bar the assertion of the Bankruptcy Claims~~. Therefore, for the avoidance of any doubt, the Motion to Dismiss with regard to Knoll's RACS argument against the Bankruptcy Claims is denied on the ~~limited~~ basis set forth herein.

### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###